| | |
|---|---|
| CHIRAG AMIN, ) | |
| ) | No. 14 C 3903 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Thomas M. Durkin |
| ) | |
| SUNTRUST BANK; CATHOLIC UNIVERSITY ) | |
| OF AMERICA; RENELL LEWIS; WESTERN ) | |
| UNION; ASSOCIATED BANK, N.A.; ) | |
| NATIONAL ARBITRATION FORUM; ) | |
| UNITED PARCEL SERVICE, INC.; CHICAGO ) | |
| SUN-TIMES; GOOGLE, INC.; ABB, LTD.; ) | |
| and TAYLOR MARK; ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Chirag Amin filed his complaint on May 28, 2014, against a number of Defendants—SunTrust Bank ("SunTrust"), Catholic University of America ("Catholic University"), Renell Lewis, Western Union, Associated Bank, N.A. ("Associated Bank"), National Arbitration Forum, United Parcel Service, Inc. ("UPS"); Chicago Sun-Times (the "Sun-Times"), Google, Inc. ("Google"), ABB, Ltd. ("ABB"), and Taylor Mark. R. 1. His complaint contains eight counts against these Defendants, including a violation of the Lanham Act ("Counts I, II, and III"), a violation of the Racketeering and Corrupt Organizations Act ("RICO") ("Counts IV"), breach of contract ("Count V"), misrepresentation ("Count VI"), breach of fiduciary duty ("Count VII"), and fraud and deceit ("Count VIII"). For the following reasons, the complaint, R. 1, is dismissed.

## BACKGROUND

The factual allegations supporting Amin's complaint arise out of an advertisement for the position of "Bookkeeper, Payroll Pay Receiver," which Amin discovered in the classified advertisement section of the Sun-Times. R. 1 ¶ 14. The advertisement was in the "Help-Wanted" section from May 27, 2010, until June 23, 2010. *Id.* The Sun-Times itself was not offering this position.

Amin inquired about this work opportunity on June 2, 2010, by sending an email to what was purportedly the email address for the "recruiting department." *Id.* On June 3, 2010 Amin received a response email from "Taylor Mark"[1] describing the job as a part-time, "independent contractor" position and summarizing the position's responsibilities, including "processing payments for goods or services via channels such as Multi-level Marketing (E-Bay)." *Id.* ¶ 16. The response also stated that the position was affiliated with ABB, Ltd., a foreign corporation, part of the ABB Group. *Id.* The account Taylor Mark used to send the email was a Google "Gmail" account. *Id.* ¶¶ 41-42. Amin replied to Taylor Mark's email on June 3, 2010, sending certain personal information that Taylor Mark requested. *Id.* ¶ 17.

On June 7, 2010, Taylor Mark confirmed that Amin was accepted for the position and provided him with a staff ID number. *Id.* Taylor Mark also provided Amin with additional details about receiving and processing of payments required

---

[1] Based on the character and nature of the factual allegations, coupled with the fact Amin has never met or spoken with Taylor Mark, it is possible that "Taylor Mark" may be a pseudonym.

for the position. *Id*. Amin did not know the specifics regarding payment or payroll processing. *Id*.

On June 18, 2010, Amin received a check for $2,450 issued in his name from Catholic University with SunTrust as its paying bank. *Id*. ¶ 18. Amin received the check via UPS overnight service. *Id*. He had not done any "work" for the position prior to receiving the check aside from responding to Taylor Mark's June 3, 2010 email. Per instruction from Taylor Mark, Amin deposited this check at his bank, Associated Bank, on June 22, 2010, waited twenty-four hours for the check to clear, and then on June 23, 2010, withdrew 90% of the money. *Id*. ¶¶ 19-20. 10% of it remained in Amin's account. *Id*. Later that day, as per additional instructions from Taylor Mark, Amin took the money he had just withdrawn and sent it via Western Union money transfer service provided at 910 North Farnsworth Avenue in Aurora, Illinois, to Anthony McMullen, a purported financial representative of ABB, Ltd. *Id*. ¶¶ 20-21. On June 24, 2010, Western Union's online records and Taylor Mark both confirmed that the money had been received. *Id*. ¶ 21.

On June 25, 2010, Amin received another check via UPS overnight service from Catholic University for $3,000 with SunTrust again as the paying bank. *Id*. Like before, Amin deposited the check at Associated Bank, waited twenty-four hours for the check to clear, withdrew most of the funds, and transferred the funds via Western Union to Anthony McMullen. *Id*. ¶ 23.

On June 30, 2010, according to Western Union's online records, the money was "picked up" or received. *Id*. Nevertheless, Taylor Mark informed Amin in

several emails that Anthony McMullen had not picked up or received the money Western Union transferred. *Id.* ¶ 24. Accordingly, Amin returned to the Western Union authorized agent at 910 North Farnsworth Avenue in Aurora, Illinois, to verify the information in the online records. *Id.* ¶ 25. Amin alleges that a customer service agent told Amin that the funds were "Paid in Error" and that the amount of $2,700 would be refunded to him within twenty business days. *Id.*

Later that day, Amin learned that his bank account had a negative balance because SunTrust had dishonored the first check Amin received from Taylor Mark and Amin's bank, Associated Bank, had reduced his balance by the amount of that plus bank fees. *Id.* ¶ 26. That evening, Amin sent an "online transaction inquiry to Western Union for discrepant, questionable money transfer status per information from Taylor Mark, Western Union's online records, and customer service information that funds were 'Paid in Error.'" *Id.* ¶ 27.

On July 1, 2010, Amin met with a personal banker at Associated Bank in Aurora, Illinois, where he learned that the check's issuer, Catholic University, had returned the check. *Id.* ¶ 28. The banker instructed Amin to contact Catholic University about the check. *Id.* On July 2, 2010, Amin called and emailed Renell Lewis, the Director of Treasury Services at Catholic University, regarding the returned check. *Id.* ¶ 29. Amin claims that he was "unable to reach [Renell Lewis] or speak directly with any person in [the] office." *Id.*

On July 6, 2010, Amin sent a facsimile to Catholic University's Office of Vice President for Finance to inquire about the returned check. *Id.* ¶ 30. He again

4

alleges that he "did not receive any verifiable and satisfactory response or definitive actions on part of CUA, its Treasury Department officers or office to correct the [negative balance] on [his] bank account." *Id*. On July 7, 2010, Amin learned that Catholic University also dishonored the second check for $3,000. *Id*. This caused Amin's bank account to become inaccessible due to insufficient funds resulting from the two returned checks and bank fees. *Id*. ¶ 31.

According to Amin, Western Union's "Terms and Conditions" require any dispute regarding money transfers to be submitted to the National Arbitration Forum ("NAF") for arbitration proceedings. *Id*. ¶¶ 73-74. Amin alleges that he contacted NAF regarding this situation, but NAF stated in a letter dated July 7, 2010, that "it lack[ed] . . . authority to resolve money transfer dispute[s] since Western Union was not associated [with NAF] or subject to NAF's jurisdiction[.]" *Id*. ¶ 74. Amin claims this was a violation of Western Union's terms and conditions, and he now lacks a "legitimate, transparent forum to address, resolve, and verify the legitimacy of [the] money transfer service commended on June 29, 2010[,] to designated receiver, Anthony McMullen[,] and money transfer by Western Union under said agreement." *Id*. ¶ 75.

**LEGAL STANDARD**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an

5

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877. The Court may dismiss a complaint *sua sponte* under Federal Rule of Civil Procedure 12(b)(6) when it is evident from the face of the complaint that the allegations are insufficient. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) ("*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading.").

## ANALYSIS

### I. Counts I, II & III: Violation of the Lanham Act

In Counts I, II, and III, Amin alleges that Taylor Mark, Google, and the Sun-Times violated the Lanham Act, 11 U.S.C. § 1125, which "proscribes the false description of goods and their origins." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). Civil liability may be imposed under the

6

Lanham Act on "[a]ny person who, *on or in connection with any goods or services*, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact[.]" 11 U.S.C. § 1125(a) (emphasis added). However, the conduct complained of here had nothing to do with a "false description of goods and their origins." *B. Sanfield, Inc.*, 168 F.3d at 971. Rather, Amin complains of a fraudulent scheme involving an opportunity for employment. That is neither a "good" nor a "service," and thus does not fall under the protections of the Lanham Act. *See Leis v. Davidson*, 955 F. Supp. 2d 821, 825 (N.D. Ill. 2013) ("[W]ithout extant goods and services, there can be no consumers to be protected."). Counts I, II, and III are dismissed with prejudice.

## II. Count IV: Civil RICO

In Count IV, Amin brings a civil RICO action under 11 U.S.C. § 1964(c) against Google, the Sun-Times, Renell Lewis and Catholic University, and Taylor Mark. To state a claim under the RICO statute, a plaintiff must adequately allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). The Seventh Circuit has repeatedly cautioned plaintiffs against bringing a RICO claim, explaining that RICO "does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Id.*; *see Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) (explaining that the RICO statute "was never intended to . .

. turn garden-variety state law fraud claims into federal RICO actions"). Looking at the first two elements alone, it is clear that Count IV cannot survive.

Regarding the first element, the Supreme Court has held "that 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). "Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009).

Amin has not satisfied the first element as to any of the Defendants named in Count IV. Regarding Google, Amin only alleges that Mark Taylor used a Gmail account to contact him. R. 1 ¶ 59. That does not demonstrate that Google in any way participated in the operation of management of any "enterprise." The same rationale applies to the Sun-Times. Amin alleges that the Sun-Times published Mark Taylor's ad. *Id.* ¶ 58. This certainly does not establish any relationship, let alone an operational or managerial role, in a racketeering enterprise. Amin alleges that Renell Lewis, an employee of Catholic University, endorsed a check that its issuing bank later dishonored. *Id.* ¶ 64. This allegation is insufficient like the others. At most, it shows that he performed a service on behalf of some alleged enterprise, which is insufficient as a matter of law. *See Crichton*, 576 F.3d at 399. Finally, Amin alleges that Taylor Mark placed an ad in the Sun-Times and used a Gmail account to contact him. R. 1 ¶¶ 60-63. Although this could indicate Taylor

8

Mark performed activities akin to some form of administrative service on behalf of some alleged enterprise, it does not demonstrate he had an operational or managerial role. Also, even if Renell Lewis or Mark Taylor had knowledge of an organization's illicit activity, that would still be insufficient to demonstrate that either one of them had a managerial or operational role. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998).

Amin's failure to satisfy element two is even more apparent. "A RICO complaint must identify the enterprise," *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995), defined as a "union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4). This association must have "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierachial (sic) or consensual decision making," *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). Amin's complaint alleges nothing that could be interpreted as satisfying the requirement that any combination of any of the Defendants were (1) acting together; (2) pursuing a common purpose; or (3) involved in "an organization with a structure and goals separate from the predicate acts themselves." *See Stachon*, 229 F.3d at 675 (quoting *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991). He alleges various predicate acts on the part of seemingly unrelated individuals and entities that do nothing more than establish that Amin was allegedly duped by a random individual, Mark Taylor. No set of additional facts could be added to Amin's

9

complaint to support the assertion that there was an enterprise between the Defendants in this case.

Based on Amin's inability to satisfy the first two elements of a RICO claim, especially the second element, Count IV is dismissed with prejudice. Because of this, an analysis of elements three and four is unnecessary.

### III. Counts V, VI, VII & VIII: Illinois State Law Claims

The claims in Counts V through VIII all arise under Illinois state law. The Court does not have original jurisdiction over those counts and thus may only address them if it chooses to exercise its supplemental jurisdiction. *See Hadad v. World Fuel Servs., Inc.*, No 13 C 3802, 2013 WL 6498894, at *3 (N.D. Ill. Dec. 11, 2013) ("28 U.S.C. § 1367 allows a district court to decide any 'claims' related to other claims over which the court has original jurisdiction 'if they are so closely related to the plaintiff's federal law-claims as to be in effect part of the same case.'" (quoting *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007)). "28 U.S.C. § 1367(c) [however] authorizes a district court to decline to exercise supplemental jurisdiction if 'all claims over which it has original jurisdiction' have been dismissed." *Zappa v. OAG Motorcycle Ventures, Inc.*, No. 13 C 6623, 2014 WL 1884463, at *4 (N.D. Ill. May 12, 2014). The federal claims in Counts I through IV have all been dismissed with prejudice. The Court finds that the exercise of supplemental jurisdiction over the state law claims in Counts V through VIII would not be appropriate as the Court has *sua sponte* dismissed the federal claims, and the state law claims are purely state law issues. Also, significant personal and

judicial resources have not yet been expended on the case. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (explaining that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims"). Accordingly, Counts V through VIII are dismissed for lack of jurisdiction.

## CONCLUSION

Amin's federal claims in Counts I, II, III, and IV are dismissed with prejudice. Amin's state law claims in Counts V, VI, VII, and VIII are dismissed for lack of subject matter jurisdiction. Amin's application to proceed *in forma pauperis*, R. 4, is denied as moot.

ENTERED:

*[signature: Thomas M. Durkin]*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 11, 2014